UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| D'MARTELL WOODSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:21-cv-00134-TWP-TAB |
| ) | |
| WENDY KNIGHT, ) | |
| ) | |
| Respondent. ) | |

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT

This matter is before the Court on a Petition for Writ of Habeas Corpus filed by Petitioner D'Martell Woodson ("Mr. Woodson"), (Dkt. 1). In May 2020, Indiana Department of Correction ("IDOC") prison staff surveilled a series of telephone calls from the Correctional Industrial Facility that were being made by an offender. The prison staff determined the offender was relaying other inmates' birth dates and social security numbers to a woman outside the prison in a scheme to deposit the inmates' economic stimulus payments. The prison staff charged Mr. Woodson with a Disciplinary Code violation after they determined he provided his personal information to the other offender. In his Petition, Mr. Woodson challenges that disciplinary action and asks the Court to restore his lost credit time and former credit earning class status. Because Mr. Woodson has not demonstrated that he was disciplined in violation of the law, the Court **denies his petition** and **directs the Clerk to enter final judgment** in the Respondent's favor.

### I. OVERVIEW

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th

Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II.  THE DISCIPLINARY PROCEEDING

Intelligence Analyst S. Gosser wrote a Report of Conduct ("conduct report") describing Mr. Woodson's alleged involvement with the other offender's operation. (Dkt. 8-1.) Analyst Gosser wrote that Mr. Woodson provided the other offender with his personal information, specifically his birth date and social security number. *Id*. Analyst Gosser determined from monitored recorded calls in May 2020 that the other offender then relayed Mr. Woodson's personal information over the telephone to a party outside the prison for the purpose of arranging collection of a stimulus check. *Id*. By "giving his personal information to [another offender]" Mr. Woodson "violates Conduct Code 240/247 Conspiracy/Attempting/Aiding or Abetting (Class B)/Possession or Solicitation of Unauthorized Information. *Id*. The record includes redacted transcripts of the calls referenced in the conduct report. (Dkt. 8-2.)

On June 19, 2020, Mr. Woodson was notified of the charge. (Dkt. 8-3.) He pled not guilty and did not request any witnesses or any physical evidence at the time. *Id*. The screening report indicated that Mr. Woodson was not given a copy of the telephone transcripts "due to evidence containing other offenders['] social security numbers." *Id*. The screening officer attested that Mr. Woodson did not request any evidence at screening, that Mr. Woodson initialed the screening

report, and that Mr. Woodson was allowed to view the telephone transcripts at that time, but he could not keep them.  (Dkt. 8-12.)

On June 23, 2020, Mr. Woodson submitted a request to present the telephone records at his hearing.  (Dkt. 8-7.)  The disciplinary hearing officer ("DHO") attested that during the hearing, Mr. Woodson was permitted to view the unredacted transcripts of the calls that led to his charge, but he again was not allowed to keep the copies due to their contents.  (Dkt. 8-13.)

At his disciplinary hearing, Mr. Woodson provided a written statement that he was a potential victim who likely had been scammed.  (Dkt. 8-5.)  The DHO considered the staff reports and copies of the telephone transcripts.  (Dkt. 8-4.)  The DHO reasoned that the only way the other offender "could come into possession of Offender Woodson's social security number is for Offender Woodson to provide it to him." *Id.*  The DHO found Mr. Woodson guilty and sanctioned him with deprivation of earned credit time and a demotion in credit earning class.  *Id.*

Mr. Woodson's administrative appeals were unsuccessful.  (Dkt. 8-8; Dkt. 8-9.)  Mr. Woodson then filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (Dkt. 1).  The Respondent filed a Return to Order to Show Cause, (Dkt. 8).  Mr. Woodson did not file a reply.

### III.  ANALYSIS

Mr. Woodson's Petition raises four grounds for relief: (1) he was charged with two code violations and found guilty of duplicate charges, (2) he requested evidence and did not receive a State Form 39586 explaining why he did not receive copies of that evidence, (3) he did not do anything illegal, and (4) he believes he was found guilty of his appeal because the Warden misread his conduct report and charge.  (Dkt. 1 at 5-6.)

Though not explicit in Mr. Woodson's stated grounds for relief, the Respondent identified a fifth argument from Mr. Woodson's general statement on page 2 of the Petition, that his First Amendment rights were violated, read together with his argument written in ground 3, that inmates are eligible for stimulus checks. (Dkt. 8 at 15.) The Respondent construes these statements as a claim that "the Department restricted Mr. Woodson's access to the courts." *Id.* Therefore, the Court will briefly consider this fifth ground in its analysis.

A.     **Failure to Exhaust Grounds of Duplicate Charges and Evidentiary Requests**

The Respondent argues that Mr. Woodson failed to exhaust his administrative remedies as to his arguments that he was charged with two offenses and that he did not receive the proper State From explaining why his request for the telephone records was denied. *Id*. at 7-8. In Indiana, only issues raised in a timely appeal to the Facility Head and then to the IDOC Final Reviewing Authority may be raised in a subsequent petition for writ of habeas corpus unless a showing of cause and prejudice or a miscarriage of justice (meaning conviction of an innocent person) has been made. *See* 28 U.S.C. § 2254(b)(1)(A); *Washington v. Boughton*, 884 F.3d 692, 698 (7th Cir. 2018); *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002); *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002).

First, Mr. Woodson concedes in his Petition that he did not raise his argument that he was impermissibly charged with violating Codes B-240/247 in his administrative appeals because he was unaware that the administration could not charge him with "duplicate charges." (Dkt. 1 at 4.) Second, the Court has reviewed Mr. Woodson's lower-level appeal and finds that it makes no argument regarding denial of evidence—let alone that reasons for any denial were not properly articulated on a department form. (*See* Dkt. 8-8.) Mr. Woodson's own unawareness that he could not raise the issue related to the Code violations does not indicate any showing of cause and

4

prejudice or a miscarriage of justice to overcome his failure to exhaust on this ground. Nor did Mr. Woodson attempt to make that showing related to his evidentiary ground. Moreover, Mr. Woodson did not file a reply addressing his failure to exhaust. Accordingly, because these grounds are procedurally barred, Mr. Woodson is not entitled to the habeas relief he seeks.

But, even if Mr. Woodson had properly exhausted his administrative remedies, his claims would still fail. First, as the Respondent points out, Mr. Woodson's charge of violating Code B-240/247 is not a "duplicate" charge; rather, "the aiding offense requires specifying two code numbers from the appendix of offenses." (Dkt. 8 at 9.) More clearly, Code B-240, conspiracy/attempting/aiding or abetting involves attempting to commit "any Class B offense," and that subsequent Class B offense must be identified to put the offender on notice of what Class B offense was allegedly attempted. (Dkt. 8-10 at 8-9.) In this case, the applicable Class B offense was Code B-247, possession or solicitation of unauthorized personal information. *Id.*

Second, Mr. Woodson does not explain how he was denied evidence. He did not request any evidence at screening. He was allowed to review the transcripts of the telephone calls he later officially asked for on a request for interview form, at screening *and* at his disciplinary hearing—he simply was not allowed to keep copies of the transcripts because they contained other inmates' social security numbers. (Dkt. 8 at 10.) Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). Certainly, circulation of other inmates' sensitive personal identification information could arguably implicate risk to such institutional concerns, and the limitation that Mr. Woodson could not retain copies of the transcripts was a valid restriction not in violation of his due process rights.

Further, Mr. Woodson is only entitled to that evidence which is material and exculpatory. Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).  As the petitioner, Mr. Woodson faces the burden of establishing that any evidence he was denied was material and exculpatory. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness).  The transcript confirmed that another offender relayed Mr. Woodson's information to a woman outside the prison—confirming the spelling of Mr. Woodson's name and relaying his social security number. (Dkt. 8-2.)  The DHO considered the transcript and found that the only way the other offender could obtain Mr. Woodson's information was because Woodson gave it to him without authorization of the warden. (Dkt. 8-4.)  Thus, for the purposes of CIC 20-06-0164, the transcript was not exculpatory, but *incriminating*, and the prison staff could not have denied Mr. Woodson due process by withholding it.

B.   **Sufficiency of the Evidence**

Next, Mr. Woodson argues that he did not do anything illegal because inmates are eligible for stimulus checks.[1]  (Dkt. 1 at 5.)  The Court construes this argument as implicating the sufficiency of the evidence to support the charge.

---

[1] Mr. Woodson references *Scholl v. Mnuchin*, 489 F. Supp. 3d 1008 (N.D. Cal. 2020), a decision that enjoined the United States of America, the U.S. Department of Treasury, and the U.S. Internal Revenue Service from withholding benefits from individuals on the sole basis of their incarcerated status.  However, Mr. Woodson's reliance on this case for the premise that he should not have been charged in his disciplinary case is misplaced.  Simply because Mr. Woodson or other inmates may be eligible to receive a stimulus check does not, as the Respondent persuasively argues "mean that Woodson can aid another inmate in obtaining his personal information without authorization from the warden." (Dkt. 8 at 15-16.)

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat*, 288 F.3d at 981. "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard … is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones*, 637 F.3d at 849) (quoting *Scruggs*, 485 F.3d at 939). Once the court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

Code B-240 prohibits "aiding, commanding, inducing, counseling, procuring or conspiring with another person to commit any Class B offense." (Dkt. 8-10 at 8.) Code B-247 prohibits "[p]ossessing or soliciting unauthorized personal information regarding another offender … except as authorized by a court order or as approved in writing by the Warden." *Id.* at 9. The Code features a non-exhaustive list of relevant information, including social security numbers, that inmates may not possess without authorization. *Id.*

The evidence supports the DHO's conclusion that Mr. Woodson provided his personal information to another offender, who then relayed it to a party outside the prison in an effort to collect stimulus checks. (Dkt. 8-1; Dkt. 8-2.) The conduct report indicates that certain calls made in May 2020 were being surveilled in an internal investigation of this scheme, and that Mr.

7

Woodson's personal information was explicitly communicated over those calls. The transcripts of the calls provide additional evidence to support the conduct report. Mr. Woodson does not contend, nor does evidence in the record show, that either he or the other offender had authorization from a court or from the warden to share Mr. Woodson's personal information. There is "some evidence" supporting the DHO's decision, which is all due process requires, and it ends the Court's inquiry here. *Jones*, 637 F.3d at 849.

**C.     Appeal Response**

Mr. Woodson argues that the warden misunderstood his charge when she responded to his appeal by stating that he was guilty of possessing someone else's social security number. (Dkt. 1 at 6.) He believes that this response means that his appeal was denied "because the Warden misread the write up." *Id.* But there is no legal basis for Mr. Woodson's argument because there is no due process right to an administrative appeal process, and thus any errors during the administrative appeal process are not grounds for habeas relief. The United States Supreme Court in *Wolff* made clear "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." 418 U.S. at 556. The due process rights that apply, which are set forth in detail in *Wolff*, do not include any safeguards during an administrative appeal, or even a right to appeal at all. And the procedural guarantees set forth in *Wolff* may not be expanded by the lower courts. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001).

**D.     First Amendment Violation**

The Court briefly acknowledges the Respondent's briefing regarding Mr. Woodson's First Amendment rights as it relates to restriction of access to courts. (Dkt. 8 at 15-16.) The Respondent argues that if Mr. Woodson was seeking benefit of a stimulus check, he was not impeded by the

Department to pursue these efforts on his own behalf. *Id.* He simply could not do what occurred in his disciplinary case, that is, apply for the benefit through providing unauthorized personal information to another inmate. *Id.* The Court agrees. The Court finds that to the extent Mr. Woodson attempts to argue that his First Amendment rights were violated by being denied access to the courts to pursue legal claims or his eligibility to receive a stimulus check, these arguments fail. Mr. Woodson is not entitled to habeas relief on such grounds.

## IV. CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Mr. Woodson's Petition does not identify any arbitrary action in any aspect of the charge, disciplinary proceeding, or sanctions that entitles him to the relief he seeks. Accordingly, Mr. Woodson's Petition for Writ of Habeas Corpus, (Dkt. [1]) is **DENIED** and the action **dismissed with prejudice.** Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 12/3/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

D'Martell Woodson, #197587
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
Pendleton, Indiana  46064

Monika P. Talbot
INDIANA ATTORNEY GENERAL'S OFFICE
monika.talbot@atg.in.gov

9